**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 9, 2017**

# In the Court of Appeals of Georgia

A17A0019. IN RE LIONEL JOHN WILLIAMS et al.

REESE, Judge.

In this closed adoption case, the potential adoptive parents of a child appeal from the trial court's order to provide notice of the pending adoption proceedings to the child's alleged biological father.[1] The Appellants allege that the lower court: (1) improperly disregarded the legal effect of an underlying termination order; (2) failed to recognize and apply the purpose and intent of the Georgia Putative Father Registry;[2] and (3) failed to recognize the legal distinction between the notice

---

[1] In 2016, the Georgia General Assembly revised some of the relevant adoption statutes. See Ga. L. 2016, p. 87, § 2; Ga. L. 2016 p. 304, §§ 3, 8, 14, 19. The revisions became effective on July 1, 2016, and do not apply to this case.

[2] See OCGA § 19-11-9 (d) (1).

requirements for alleged biological fathers and legal fathers. For the reasons set forth infra, we reverse.

The record shows that the subject child was born on November 1, 2015. The child's biological mother relinquished her parental rights in favor of a licensed child-placement agency, which facilitated the adoptive placement of the child with the Appellants. In her affidavit, which she provided pursuant to OCGA § 19-8-26 (h), the biological mother did not identify her child's biological father. She stated that she and the biological father were not married, explaining that the child was the result of a one-time sexual encounter. The child-placement agency searched the Georgia Putative Father Registry[3] and found no registrant who had asserted a paternal interest in the child. On January 12, 2016, the trial court entered an order terminating the parental rights of the biological mother and any unknown, unnamed biological father.

---

[3] The Georgia Putative Father Registry provides a method for a person claiming to be the biological father, but is not the legal father, of a child to confidentially identify himself. See OCGA § 19-11-9 (d), (e). See also former OCGA § 19-8-13 (h) (2015) ("A petition for adoption regarding a child . . . who ha[s] a living biological father who is not the legal father and who has not surrendered his rights to the child . . . shall include a certificate from the putative father registry disclosing the name, address, and social security number of any registrant acknowledging paternity . . . for a period beginning no later than two years immediately prior to the child's date of birth.").

During the week of January 25, 2016, a man contacted the agency and "verbally claimed paternity of the child." According to the Appellants, he refused to provide his address and refused to meet with the agency to discuss his claim. When the Appellants filed their petition to adopt on February 2, 2016, their counsel informed the trial court that an alleged biological father had recently contacted the agency. The trial court entered a sua sponte order on February 4, 2016, directing the Appellants to obtain the alleged biological father's contact information and serve him with a copy of the termination order and a copy of the adoption petition. The trial court's order also stated that the alleged biological father had 15 days from the date of service to file a motion to set aside the termination order. This appeal followed.[4]

"[I]n an adoption case, the trial judge sits as both judge and jury and is vested with a broad range of legal discretion."[5] On appeal, "we construe the evidence to uphold the trial court's findings and judgment and affirm if there is any evidence to

---

[4] Recognizing the importance of its order, the trial court issued a Certificate of Immediate Review the same day. This Court granted the Appellants' Application for Interlocutory Review.

[5] *Park v. Bailey*, 329 Ga. App. 569, 571 (765 SE2d 721) (2014) (punctuation and footnote omitted).

support the findings."[6] If there are questions of law, however, we apply a de novo standard of review.[7] With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

1. The Appellants argue that the trial court improperly disregarded the legal effect of the underlying termination order. We agree.

OCGA § 15-11-283 (c) provides as follows:

If the identity of the biological father whose rights are sought to be terminated is not known to the petitioner or the petitioner's attorney and the biological father would not be entitled to notice in accordance with subsection (a) of this Code section,[8] then it shall be rebuttably

---

[6] Id. (punctuation and footnote omitted).

[7] Id.

[8] Under OCGA § 15-11-283 (a), notice of termination proceedings shall be served on a biological father who has not surrendered his parental rights and:
(1) Whose paternity has been previously established in a judicial proceeding to which the father was a party;
(2) Whose identity is known to the petitioner or the petitioner's attorney;
(3) Who is a registrant on the putative father registry and has acknowledged paternity of the child named in the petition brought pursuant to this article;
(4) Who is a registrant on the putative father registry who has indicated possible paternity of the child named in the petition brought pursuant to this article that was born to such child's mother during a period beginning no more than two years immediately preceding such child's date of birth; or
(5) Who, if the court finds from the evidence including but not limited to the affidavit of the mother of a child named in the petition brought pursuant to this

4

presumed that he is not entitled to notice of the [termination] proceedings. The court shall be authorized to require the mother to execute an affidavit supporting the presumption or show cause before the court if she refuses. Absent evidence rebutting the presumption, no further inquiry or notice shall be required by the court, and the court may enter an order terminating the rights of the biological father.

In this case, the mother executed an affidavit in which she swore under oath that she and the biological father had a one-time encounter that resulted in the pregnancy and that the identity of the biological father was unknown to her. Further, there is no evidence that any man claiming to be the biological father provided any financial support for the mother or child, lived with the child, or made any attempts to legitimate the child before the court issued the termination order.[9] Finally, a certificate of a search of the Georgia Putative Father Registry was filed that indicated that no man had acknowledged paternity of the child or indicated possible paternity of a child born to the child's mother. Under these circumstances, the trial court

---

article, has performed any of the following acts:
  (A) Lived with such child;
  (B) Contributed to such child's support;
  (C) Made any attempt to legitimate such child; or
  (D) Provided support or medical care for such mother either during her pregnancy or during her hospitalization for the birth of such child.

[9] See OCGA § 15-11-283 (a).

properly concluded that the unknown biological father was not entitled to notice of the termination proceedings, pursuant to OCGA § 15-11-283 (c).

Once the trial court terminated the rights to "any unknown, unnamed biological father" of the child, the alleged biological father who subsequently contacted the agency, was no longer "entitled to notice of proceedings for the adoption of his . . . child by another," nor did he have "any right to object to the adoption or otherwise to participate in such proceedings."[10] Consequently, because the termination order in this case has not been set aside,[11] the alleged biological father was not entitled to any notice of the adoption proceedings. It follows that the trial court erred in ordering the Appellants to provide him with such notice through the documents listed in its February 4, 2016 order.

---

[10] OCGA § 15-11-261 (b). See OCGA § 15-11-261 (a) ("An order terminating the parental rights of a parent shall be without limit as to duration and shall divest the parent and his or her child of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other, except: (1) The right of such child to receive child support from his or her parent until a final order of adoption is entered; (2) The right of such child to inherit from and through his or her parent. The right of inheritance of such child shall be terminated only by a final order of adoption; and (3) The right of such child to pursue any civil action against his or her parent.").

[11] See generally *Howell Mill/Collier Assocs. v. Gonzales*, 186 Ga. App. 909, 910 (1) (368 SE2d 831) (1988) (physical precedent only) ("[A] judgment which is not void on its face is valid until it is set aside.") (citation omitted).

2. In light of our decision in Division 1, supra, the Appellants' remaining enumerations of error are moot.[12]

*Judgment reversed. Doyle, C. J., and Miller, P. J., concur*.

---

[12] *Richardson v. Phillips*, 302 Ga. App. 305, 310-311 (2) (690 SE2d 918) (2010) ("A case is considered moot if the parties' dispute has been resolved, such that the issues involved have become academic or dead.") (citations and punctuation omitted).